UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC D. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:11-cv-00785-WTL-MJD |
| | ) |
| BRUCE LEMMON, | ) |
| | ) |
| Defendant. | ) |

**Entry Granting Summary Judgment in Favor of Defendant
and Directing Entry of Final Judgment**

Plaintiff Eric Smith, a state prisoner and frequent litigator in Indiana's state and federal courts, filed this civil action in state court (perhaps because he was indigent at the time and subject to the three strikes barrier of 28 U.S.C. § 1915(g) in federal court). His case was removed to this Court by the defendant, Bruce Lemmon, Commissioner of the Indiana Department of Correction ("DOC"). See dkt. 1-1 at 13-19. Smith alleges that Lemmon violated Smith's First Amendment rights as well as state law, citing Ind. Code §§ 11-11-7-2, 11-11-3-4 and 34-27-3-1(1). The federal claim is brought pursuant to 42 U.S.C. § 1983. The state law claims are decided pursuant to the Court's supplemental jurisdiction. See 28 U.S.C. ʹ 1367(a).

Smith's claims are based on the following circumstances. While incarcerated at Wabash Valley Correctional Facility, Smith was unable to afford the postage necessary to correspond with attorneys regarding possible representation. When money was sent to him from family or friends, it was collected and sent to the federal courts "because he owes the federal courts around $2,000." Dkt. 1-1 at 17. Smith alleges that the two envelopes and first-class stamps provided to

indigent inmates each month were inadequate and that he was forced to choose between writing to family and friends or contacting attorneys about his cases with his two stamped envelopes. Dkt. 1-1 at 14. Smith is asking this Court to declare a right to free postage to contact attorneys regarding representation. Dkt. 65 at p. 14.

The defendant argues that Smith is not entitled to relief and that his problem is a practical one. That is, he can't afford stamps. This problem, the defendant argues, is a product of his own doing because of the litigation costs and fines he accumulated over the years. Smith, the defendant argues, is not entitled to free postage paid by the taxpayers when that postage does not relate to pending cases.

This is the second time Smith has sought summary judgment in this action. See dkt. 56. The defendant responded, seeking summary judgment in his favor pursuant to Rule 56(f) of the *Federal Rules of Civil Procedure*. It would have made more sense procedurally for the defendant to have filed a cross motion for summary judgment, pursuant to Rule 56(a). But in any event, both parties had adequate notice and time to respond to the grounds upon which this Entry rests and Smith was provided with the notice required by *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). For the reasons explained below, Smith's motion for summary judgment [dkt. 64] is **denied** and summary judgment is granted in favor of the defendant pursuant to Rule 56(f)(1) of the *Federal Rules of Civil Procedure*.

### Standard of Review

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. P. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there

is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. P. 56(e). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

## Facts

Consistent with the foregoing, the following statements of facts were evaluated pursuant to the standards set forth above and are undisputed for the purpose of the motions for summary judgment.

1. Bruce Lemmon is the former Superintendent of the Wabash Valley Correctional Facility and became the Commissioner of the Indiana Department of Correction on January 17, 2011.

2. Lemmon drafted and/or approved policy numbers 02-01-103 and 00-01-102, known as the "Wabash Valley Correctional Facility Operational Procedures Manual of Policies and Procedures." These policies each provide: "Mail sent by an offender to numerous attorneys in an attempt to find an attorney to represent the offender shall be at the offender's expense." Dkt 66-1 at 19 (regarding policy 02-01-103) and Dkt. 66-1 at 5 (regarding 00-01-102).

3. With a few exceptions, during the time Smith was indigent at Wabash Valley Correctional Facility, he was provided with two stamped envelopes each month for the purpose of correspondence.

## Discussion

In this case, there are no genuinely disputed facts which remain to be tried and summary judgment to resolve the legal questions between the parties is appropriate.

**First Amendment Claim**

The primary legal question in dispute is whether the First Amendment requires a state to provide an indigent prisoner with postage so that the prisoner can seek representation or legal advice from an attorney. In other words, is a DOC policy requiring that mail sent by an offender to numerous attorneys in an attempt to find an attorney to represent the offender be at the offender's expense unconstitutional?

There is no question that the First Amendment protects a person's right to hire and consult an attorney. *Denius v. Dunlap*, 209 F.3d 944, 953 (7th Cir. 2000) ("The right to hire and consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association and petition."). This means that the state is prohibited from interfering with an individual's ability to seek legal advice and retain legal counsel without sufficient justification. *Id.* at 954. In this case, however, the issue is not state interference. Smith does not claim that he

was denied access to the courts or that he was denied postage to mail materials to the courts or the opposing counsel in pending litigation. *Bounds v. Smith*, 430 U.S. 817, 824-825 (1977) ("It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them."). Nor is there any prohibition or limitation on corresponding with attorneys.

The issue is whether the state must provide an indigent prisoner with free postage to facilitate his recruitment of counsel. The answer is no. "Although prisoners have right of access to courts, they do not have right to unlimited free postage." *Ingram v. Jones*, 507 F.3d 640, 645 (7th Cir. 2007) (citing *Gaines v. Lane,* 790 F.2d 1299, 1308 (7th Cir. 1986)). "[T]here is no right of *subsidized* access." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010) (*quoting Johnson v. Daley,* 339 F.3d 582, 586 (7th Cir. 2003) (emphasis in original)).

Smith argues that even if an indigent inmate is not entitled to free stamps to contact potential lawyers, the policy providing that "[m]ail sent by an offender to numerous attorneys in an attempt to find an attorney to represent the offender shall be at the offender's expense" is unconstitutional for another reason. Dkt 66-1 at 19 (regarding policy 02-01-103) and Dkt. 66-1 at 5 (regarding 00-01-102). That is, to enforce the policy correctional staff necessarily are required to read all outgoing mail to attorneys labeled "legal mail" in order to see if representation was being sought. The defendant argues that there is no evidence that Smith's mail is being read. In addition, such letters are not legal mail and can only be considered personal correspondence.

"Legal mail," is a technical term for mail relating to legal proceedings. *Guajardo-Palma v. Martinson*, 622 F.3d at 801-802. A prisoner's letter to a lawyer written in the hope that the lawyer will agree to represent him in a pending or impending legal action is properly understood as legal mail which requires some protection. The defendant's assertion that such

communications are simply personal correspondence is rejected. Smith's claim cannot prevail, however, because there is no evidence that Smith's legal mail to attorneys has been read in violation of his First Amendment rights. The Seventh Circuit has explained the contours of the First Amendment's protections:

> A number of cases characterize the reading of mail to or from a prisoner's lawyer in a pending or impending litigation as infringing the right of free speech rather than or in addition to the right of access to the courts. The theory is that reading communications between a lawyer and his client "chills the individual's ability to engage in protected speech." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000). But since the purpose of confidential communication with one's lawyer is to win a case rather than to enrich the marketplace of ideas, it seems more straightforward to base the concern with destroying that confidentiality on the right of access to the courts (or, as we're about to point out, on the due process right to a fair hearing).

*Id.* at 802-803. Accordingly, the issue is not whether Smith's ability to engage in protected speech was infringed but whether Smith's ability to litigate any matter was affected by the reading of his letters to attorneys seeking counsel. *Id.* at 806. In addition, there is nothing improper about prison employees verifying (but not "reading") the plaintiff's legal mail in his presence to determine whether it is entitled to free postage. *Id.* at 805 ("the prison employee who opens the letter will have to glance at the content to verify its bona fides. But the imperfection is necessary to protect the prison's interest. . .").

Given these principles, Smith has failed to present any evidence which would entitle him to relief. Smith fails to provide any details regarding any letters or privileged communications which were allegedly reviewed outside his presence.[1] Even if legal mail was read outside his presence there is no evidence that his ability to litigate any matter was affected. *Id.* at 806 ("[A]s long as the prison confines itself to opening letters [outside the presence of an inmate] that either

---

[1] Smith states that he had a memo to this effect but that it was destroyed by the law librarians. The details of the alleged memo are unknown. Without specifics it is impossible to determine whether the memorandum (if it existed) implicates Smith's First Amendment rights.

are public or if private still are not of a nature that would give the reader insights into the prisoner's legal strategy, the practice is harmless and may be justified by the volume of such mail that a litigious prisoner can generate."). Nor is there evidence that Lemmon personally read Smith's outgoing privileged mail to attorneys. In order to be held responsible for the violation of a federally secured right for which a remedy in damages is sought pursuant to 42 U.S.C. ' 1983, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000).

Next, Smith argues that as a result of the policies at issue both state and federal courts declined to recruit counsel to represent him in his civil cases. There is no merit to this claim. First, there is no constitutional right to an attorney in a civil proceeding. *Jackson v. Kotter,* 541 F.3d 688, 700 (7th Cir. 2008). Thus, any injury is not of a constitutional dimension. Second, the assertion that he has been denied counsel as a result of the policies at issue is speculative because a court's decision to recruit counsel for a litigant is discretionary. Pursuant to 28 U.S.C. § 1915(e)(1) the Court may only request an attorney to represent any person unable to afford counsel. The Seventh Circuit has explained that in evaluating whether to recruit counsel the court should first consider if "a plaintiff makes a reasonable attempt to secure counsel," *Navejar v. Iyiola,* 718 F.3d 692, 696 (7th Cir. 2013), and if so, "the court must examine 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Id.* (*citing Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). Thus, the threshold inquiry is whether the plaintiff can show that a reasonable attempt to secure counsel has been made. What is reasonable depends on a plaintiff's circumstances. The inability to mail correspondence to potential counsel would be one relevant circumstance. Indiana has a similar provision. If a prisoner does not have the financial means to hire an attorney, he may

(under exceptional circumstances) qualify for appointment of counsel in accordance with Ind. Code §§ 34–10–1-1 and 34-10-1-2(b). Counsel shall not be appointed for an indigent litigant, however, if the litigant failed to make a diligent effort to obtain an attorney. Ind. Code § 34-10-1-2(d). Again, what is "diligent" depends on the prisoner's circumstances.

Finally, Smith argues that if he had free stamped envelopes to contact an attorney that an attorney may have assisted him in filing complaints and that "Smith would have won the complaints he was unable to file." Dkt. 65 at p. 7 and 24. In response, the defendant correctly notes that Smith has not identified any claims which he lost in court as a result of the policies in question. Nor is this claim supported by admissible evidence. Nothing in the policies prevented Smith from filing his proposed civil actions *pro se*. Accordingly, Smith is not entitled to relief on this basis.

**State Law Claims**

Smith alleges that Lemmon also violated state law, citing Ind. Code §§ 11-11-7-2, 11-11-3-4. However, as this Court previously noted in the Entry signed on February 21, 2013, there is no authority presented to support Smith's claim that there is a private cause of action for the violation of state laws alleged. See dkt. 56; *See also Blanck v. Ind. Dep't of Corr.*, 829 N.E.2d 505, 510 (Ind. 2005); *Cantrell v. Morris*, 849 N.E.2d 488 (Ind. 2006).

In addition, Smith seeks a mandate from this Court requiring Lemmon to allow Smith to mail out letters to attorneys even if he is just requesting representation. Dkt. 1-1 at p. 18. Smith argues that any letter to an attorney should be considered legal correspondence and that all prisoners who are indigent should be accorded free postage for their legal mail. Smith's request for mandate must be **denied**. Pursuant to Ind. Code § 34-27-3-1 an action for mandate may be brought against a public officer to compel the performance of any act that the law specifically

requires or duty resulting from an office. But neither § 11-11-7-2 or § 11-11-3-4(a) specifically requires the Commissioner of the DOC to provide more than two stamps to indigent inmates for correspondence with attorneys not currently representing them.[2] *See Malone v. Butts*, 974 N.E.2d 1025, 1027 (Ind. Ct. App. 2012) ("Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law."). In addition, Smith states that he is no longer indigent and he is able to write attorneys for help. Dkt. 65 at 23-24. Under these circumstances even if state law could be understood to impose a clear duty on the Commissioner to provide more than two stamps on demand for an indigent inmates' legal correspondence for the purpose of recruiting counsel, Smith's petition for mandate or request for injunctive relief is moot.

## Conclusion

For the reasons explained above, the policy that "[m]ail sent by an offender to numerous attorneys in an attempt to find an attorney to represent the offender shall be at the offender's expense" does not violate Smith's First Amendment rights in the circumstances of this case and thus Smith is not entitled to relief pursuant to 42 U.S.C. § 1983. Smith's state law claims are dismissed because there is no private cause of action available and Smith is not entitled to a mandate because he is no longer indigent.

---

[2] Section 11-11-7-2 provides: "The department [of correction] shall provide an indigent confined person with free stationery, envelopes, postage, and notarial services for legal correspondence." Section 11-11-3-4(a) provides that absent certain exceptions: "[t]he department may read and examine correspondence sent to or from a confined person unless it is clearly marked as correspondence that is privileged under state or federal law."

Accordingly, summary judgment is granted in favor of the defendant and against the plaintiff. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/10/2014

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

ERIC D. SMITH
DOC 112675
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362
PRO SE

All Electronically Registered Counsel